UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-23212-CIV-ALTONAGA/Brown

YAMILET MEJIA PALMA,

     Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

     Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on the Defendant, American Airlines, Inc.'s ("American['s]") Motion for Summary Judgment [ECF No. 60], filed October 12, 2010. The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND

The following is a summary of the undisputed facts presented by the Defendant (*see* Def.'s Statement of Undisputed Material Facts ("SMF") [ECF No. 61]), and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("SMFO") [ECF No. 73]).

On October 10, 2008, Plaintiff, Yamilet Mejia Palma ("Palma"), was a passenger on one of American's international flights from Buenos Aires, Argentina, to Miami, Florida. (*See* SMF ¶¶ 1–2). The airliner — a Boeing 777 — was equipped with seatbelt lights that illuminated when seatbelts were required. (*See id.* ¶¶ 3–4). In addition to the lights, passengers were alerted by a "cling-cling" noise, an announcement over the PA system, and flight attendants' instructions. (*Id.* ¶ 5). Plaintiff understood this warning system. (*See id.* ¶¶ 4–5).

Soon after take-off, Palma fell asleep for several hours. (*See id.* ¶ 7). When she awoke, she

Case No. 09-23212-CIV-ALTONAGA/Brown

ate breakfast and then ventured to the restroom.  (*See id.* ¶ 8).  Although Palma did not know whether the seatbelt light was illuminated at that time and never checked, she noted many other passengers were also up, out of their seats, and walking around.  (*See id.* ¶ 9; *see also* SMFO ¶ 8).  Moreover, even though Palma heard an announcement over the PA system indicating the flight would be landing in 20 minutes, she asserts the announcement made no mention of seatbelts or that passengers should return to their seats.  (*See* SMF ¶ 11; SMFO ¶ 11).  Upon hearing this announcement, Palma considered returning to her seat and fastening her seatbelt, but decided she really wanted to use the restroom.  (*See* SMF ¶ 12).

While Palma was standing and waiting to use the restroom, the flight was shaken by turbulence.  (*See id.* ¶ 13).  The turbulence came suddenly, and the flight crew claimed they never received any advanced warning of its existence.  (*See id.* ¶¶ 15–28).  Plaintiff, however, contends that the pilots should have been aware of a convective weather cell and avoided the turbulence.  (*See* SMFO ¶¶ 15, 19).  The entire flight crew — three people — testified the seat-belt light was illuminated when the turbulence hit.  (*See* SMF ¶ 14; SMFO ¶ 14).  The flight's captain, James Hoehn, even testified at deposition that after returning from his break, he checked to see that the seatbelt light was illuminated, and claimed it was lit.  (*See* SMF ¶¶ 20–21.)

Luckily the air turbulence did not result in a fatal accident.  Instead, as a result of the turbulence, and the fact Palma was standing and not in her seat wearing her seatbelt, she fell and was injured.  These alleged injuries include a fractured wrist, knee and shoulder injuries, and post-traumatic stress.

On December 29, 2009, Palma filed suit against American for money damages stemming

Case No. 09-23212-CIV-ALTONAGA/Brown

from American's alleged breach of the duty to use reasonable care. These damages are sought under the Warsaw Convention (the "Convention"). American now moves for summary judgment arguing (1) it is wholly exonerated from liability as Palma's negligence was the sole cause of her alleged injuries, and (2) if Palma is not wholly at fault, American cannot be liable for damages exceeding 100,000 Special Drawing Rights ("SDRs") because it took all necessary measures to detect the turbulence.

## II.  LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

3

disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.  ANALYSIS

**A.     There are Material Issues of Fact as to Whether, or to What Degree, Palma Caused Her Injuries**.

American first argues it should be excused from liability because Palma's negligence was the sole cause of her injuries.  (*See* Mot. 5).  Liability for injuries occurring on international flights is solely governed by the Warsaw Convention.  *See In re Am. Airlines, Inc. Flight 869 Turbulence Incident of Jan. 17, 1996*, 128 F. Supp. 2d 1367, 1368 (S.D. Fla. 2001) [hereinafter *869 Turbulence*] (citing *El Al Isr. Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999)); *see also* Warsaw Convention, Arts. 1, 17, 49 Stat. 3000 (1934), *reprinted at* note following 49 U.S.C.S. § 40105 (LexisNexis 2010).  Travel is "international" under the Convention so long as the flight begins and ends in different signatory nations, as is the case here.[1]  *See* Warsaw Convention, Art. 1; *869 Turbulence*, 128 F. Supp. 2d at 1369.

The Convention provides for strict liability where an "accident" occurs aboard an aircraft. *See Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003); *869 Turbulence*, 128 F. Supp. 2d at 1369.  The Supreme Court has defined an "accident" as "an unexpected or unusual event or happening that is external to the passenger."  *Air Fr. v. Saks*, 470 U.S. 392, 405 (1985).

_____

[1] It is undisputed Palma was traveling internationally from Buenos Aires, Argentina, to Miami, Florida, aboard an aircraft.  Both Argentina and the United States are signatories to the Convention.  *See List of Parties to Warsaw Convention*, International Civil Aviation Organization, http://www2.icao.int/en/leb/List%20of%20Parties/wc-hp_en.pdf (last visited Dec. 6, 2010).

Case No. 09-23212-CIV-ALTONAGA/Brown

And the accident must then cause the complained-of injuries. *See id.* "But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Id.* at 406. The "[accident] definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405. All the passenger need show is that "some link in the chain [of causes] was an unusual or unexpected event external to the passenger." *Id.* at 406. The focus is on the cause of the injury, not merely that an injury has occurred. *See Husain v. Olympic Airways*, 116 F. Supp. 2d 1121, 1130 (N.D. Cal. 2000) (citing *Air Fr.*, 470 U.S. at 399)).

While the Warsaw Convention imposes strict liability for injuries from accidents occurring during international travel, there are exceptions. One such exception is for a plaintiff's comparative negligence. *See Husain*, 116 F. Supp. 2d at 1141; *Eichler v. Lufthansa German Airlines*, No. 91 Civ. 8407 (CSH), 1994 WL 30464, at *3 (S.D.N.Y. Jan. 28, 1994). Article 21 of the Warsaw Convention provides "[i]f the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability."[2] Warsaw Convention Art. 21; *Husain*, 116 F. Supp. 2d at 1141. In applying this comparative-negligence standard, two steps must be taken. First, the Court must consider whether, or to what extent, the Plaintiff acted negligently. *Husain*, 116 F. Supp. 2d at 1141. Then, if the Plaintiff is found negligent, her negligence must be compared with the carrier's

---

[2] Florida law also recognizes comparative negligence as a defense to strict-liability claims. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 90 (Fla. 1976); *Philip Morris USA, Inc. v. Arnitz*, 933 So. 2d 693, 697 (Fla. 2d DCA 2006).

Case No. 09-23212-CIV-ALTONAGA/Brown

negligence. *Id.*

American maintains Palma was negligent in getting out of her seat without checking whether the seatbelt light was on, ignoring the lit light, and ignoring the PA announcement.[3] (*See* Mot. 8–9). American bolsters its argument by noting that upon hearing the PA announcement, Palma considered returning to her seat, but ultimately decided to continue waiting for the bathroom. (*See id*. at 9). In essence, then, American asserts what caused Palma's injuries was not an "accident" as defined under the Convention. Rather, it was Palma herself.

There are material issues of fact as to whether or not Palma acted negligently. Palma contradicts American and maintains that the seatbelt sign was not illuminated. (*See* Mot. Opp. 5). Although the cabin crew testified at deposition that the seatbelt light was lit, Palma asserts that other facts belie this claim. She points out that at the time she was standing, other passengers were also out of their seats and "walking" around. (Mot. Opp. 5; Palma Dep. 29:12–17, Mar. 11, 2010 [ECF No. 73-1]). While this was all occurring, Palma states the flight attendants were standing around — near her and the restroom — "laughing" and "talking." (Mot. Opp. 6). American's policies, however, require that flight attendants ask passengers to return to their seats when the seatbelt light is illuminated. (*See* Tamborra Dep. 14:11–16:9, 20:13–17).

The actions of other passengers as well as the flight attendants create the inference the

---

[3] American's policy dictates that the "20-minute announcement" should include instructions that passengers should return to their seats and fasten their seatbelts. (Tamborra Dep. 14:5–10, 20:7–12, Sept. 30, 2010 [ECF No. 73-1]). (The page numbers on Ms. Tamborra's deposition were cut off when the deposition was photocopied for use as an exhibit. As a result, the page numbers in citations to her deposition correspond to the ECF page numbers (from entry number 73-1), not the page numbers of the deposition.)

Case No. 09-23212-CIV-ALTONAGA/Brown

seatbelt light may not have been lit.  The Supreme Court has stated that in cases like this, "where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' . . . caused the passenger's injury." *Air Fr.*, 470 U.S. at 405.  Moreover, whether or not a bout of turbulence constituted an "accident" should be "decided following a trial on the merits . . . ." *Magan*, 339 F.3d at 164–65 (collecting cases).  The disputed facts prevent the Court from finding Palma was the sole cause of her injuries and granting Defendant summary judgment.  And even if Palma's actions were negligent, that negligence does not necessarily entirely erase the effects of an accident.  *See, e.g.*, *Serrano v. United States*, No. 07-22346-CIV-JJO, 2008 WL 4541003, at *4 (S.D. Fla. Oct. 9, 2008) (denying summary judgment on comparative negligence due to issues of fact on the apportionment of fault).[4]

**B.  There are Material Issues of Fact as to Whether American Took "All Necessary Measures" to Avoid Harm to its Passengers, Including Palma**.

American's second argument is that *if* the Court does not find Palma was entirely at fault for her injuries, then liability should be limited to 100,000 Special Drawing Rights ("SDRs").[5]  It asserts that under the IATA Intercarrier Agreement on Passenger Liability (the "IIA") and the Agreement

---

[4] Additionally, Palma maintains there are material issues of fact as to the question of whether or not American was negligent in flying through a convective weather cell as opposed to flying around it.  Because there are material issues of fact as to the extent of the parties' negligence with regard to the seatbelt light, this argument is not addressed.

[5] "The SDR is an international reserve asset, created by the [International Monetary Fund] in 1969 to supplement its member countries' official reserves.  Its value is based on a basket of four key international currencies, and SDRs can be exchanged for freely usable currencies."  International Monetary Fund, *Special Drawing Rights, A Factsheet*, http://www.imf.org/external/np/exr/facts/sdr.HTM (last visited Dec. 6, 2010).  Those four currencies are the euro, Japanese yen, pound sterling, and U.S. dollar.  *See id.*  Presently, one SDR is worth roughly $1.50.  *See* International Monetary Fund, *SDR Valuation*, http://www.imf.org/external/np/fin/data/rms_sdrv.aspx (last visited Dec. 6, 2010).

Case No. 09-23212-CIV-ALTONAGA/Brown

on Measures to Implement the IATA Intercarrier Agreement (the "MIA"), it took "all necessary measures" to avoid causing Palma's injuries. (Mot. 10). Under the MIA, taking those measures limits carriers' liability to 100,000 SDRs.

As discussed, the Warsaw Convention provides the exclusive remedy for accidents occurring on international flights between countries that have signed the treaty. One of the Convention's effects is a limitation on liability. Originally, the maximum recovery was roughly $8,300. Then in 1966 the Convention was supplemented by the Agreement Relating to Liability Limitation of the Warsaw Convention and the Hague Protocol (the "Montreal Agreement"). The Montreal Agreement increased the Convention's $8,300 damages cap to $75,000. *See Pemberton v. Exec. Airlines, Inc.*, 628 F. Supp. 2d 1355, 1357 (S.D. Fla. 2009).

Although the Convention, as supplemented, provides for a $75,000 cap on damages, American has also entered into two separate and private contractual agreements, the IIA and MIA. (*See* Mot. 3 [ECF No. 60]).[6] The MIA, along with the IIA, are the fruits of carriers' efforts to increase the liability limits of the Warsaw Convention. Under these agreements, liability has been expanded to 100,000 SDRs, and the carriers' available defenses are limited below that amount. *See* MIA ¶ I(2)[7] ("{CARRIER} shall not avail itself of any defence under Article 20(1) of the Convention with respect to that portion of such claim which does not exceed 100,000 SDRs."). The Warsaw-Convention Article-20(1) defense, specifically mentioned in MIA ¶ I(2), prevents liability

---

[6] A list of those carriers that have signed the MIA is available on the IATA website, http://www.iata.org/ whatwedo/industry-affairs/Documents/mia-signatory-list.pdf.

[7] A copy of the MIA is also available on the IATA website, http://www.iata.org/whatwedo/ Documents/measures_implementation_intercarrier_agreement_feb09.pdf.

Case No. 09-23212-CIV-ALTONAGA/Brown

where the carrier has taken "all necessary measures" to "avoid the damage or that it was impossible for him or them to take such measures." Warsaw Convention Art. 20(1). Where the IIA and MIA apply, as they do here,[8] carriers may not invoke this Article 20(1) "all-necessary-measures" defense for amounts less than 100,000 SDRs (roughly $150,000). *See Price v. KLM-Royal Dutch Airlines*, 107 F. Supp. 2d 1365, 1370 (N.D. Ga. 2000).

Courts do not literally interpret the term "all necessary measures." *See Verdesca v. Am. Airlines, Inc.*, No. 3-99-CV-2022-BD, 2000 WL 1538704, at *3 (N.D. Tex. Oct. 17, 2000). Instead, the phrase has been interpreted to mean "all *reasonable* measures." *Lee v. Am. Airlines, Inc.*, No. CIVA3:01-CV-1179-P, 2004 WL 2624647, at *1 (N.D. Tex. Nov. 17, 2004) (emphasis added). Carriers must only show they took "all precautions that in sum are appropriate to the risk, i.e., measures reasonably available to defendant and reasonably calculated, in cumulation, to prevent the subject loss." *Mfrs. Hanover Trust Co. v. Alitalia Airlines*, 429 F. Supp. 964, 967 (S.D.N.Y. 1977; *see also Medina v. Am. Airlines, Inc.*, No. 1:02-cv-22133-STB, 2006 WL 3663692, at *2 (S.D. Fla. Nov. 14, 2006) (adopting the *Manufacturers Hanover Trust* definition of "all necessary measures"). The failure to take any particular precaution that might have prevented the loss does not necessarily prevent the carrier from relying on this defense; not every possible precaution must be taken. *See Mfrs. Hanover Trust*, 429 F. Supp. at 967. But summary judgment is seldom granted based on this defense because "the determination of reasonableness is a question to be answered by the fact finder after trial." *Obuzor v. Sabena Belgian World Airlines*, No. 98 CIV 0224(JSM), 1999 WL 223162,

---

[8] American has conceded that the MIA and its 100,000-SDR liability limit apply, and not the Warsaw Convention's (as supplemented) $75,000 limit. (*See* Mot. 4).

Case No. 09-23212-CIV-ALTONAGA/Brown

at *1 (S.D.N.Y. Apr. 16, 1999) (citing *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997)).  That is, of course, unless the "non-moving party has failed to set forth any facts going to an essential element."  *King*, 111 F.3d at 259.

American argues that the turbulence was unexpected and the flight crew had no advance warning.  (*See* Mot. 12–14).  Yet, despite the lack of an imminent warning — there was nothing on the radar, no lightning flashes indicating turbulence, and no warning from outside sources — American asserts that the seatbelt light was lit.  (*See* Mot. 13).  As a result, American states it took all necessary measures under the circumstances and should be shielded from liability above 100,000 SDRs.  (*See* Mot. 14).

Palma contends American could have taken other measures to avoid causing her injuries. She disputes American's assertion that this was "clear-air" turbulence.  In support, she submits three experts' reports.[9]  Palma then posits that if this was not clear-air turbulence, American did not take all necessary measures as it could have flown around the weather.  (*See* Mot. Opp. 2–3).  Moreover, she asserts that because there are issues of fact as to whether the seatbelt light was lit, this also precludes judgment on the damages-cap issue.[10]

---

[9] American has moved to strike two of Palma's experts  – Robert L. Cauble [ECF No. 58] and Donald E. Sommer [ECF No. 57]  —  and has asked that the Court delay ruling on this Motion until the other motions are decided.  American did not, however, move to strike Plaintiff's expert, Dr. Lee E. Branscome, who opined this was not clear-air turbulence.  (*See* Mot. Ex. E [ECF No. 73-3]).  Because the Court is able to decide this Motion without reference to the two disputed experts' reports, there is no need to delay addressing the summary judgment issues.

[10] As discussed, the fact that at the time the turbulence hit other passengers were out of their seats and milling about the plane, and the fact that the flight attendants did not ask any of the passengers to return to their seats and buckle their seatbelts, create issues of fact as to whether the seatbelt light was in fact lit.

10

Case No. 09-23212-CIV-ALTONAGA/Brown

If the seatbelt light was in fact not lit, then a rational jury could find American did not take all necessary measures.  Likewise, a rational jury could find that if there was not clear-air turbulence, American could have taken the additional measure of flying around the weather.  Thus, summary judgment may not be granted on limiting Palma to a maximum recovery of 100,000 SDRs.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, American Airlines, Inc.'s Summary Judgment Motion **[ECF No. 60]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of December, 2010.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

11